# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2021 | **DATE** | 2/13/2001 |
| **CASE TITLE** | Anderson vs. Hale et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Combined motion of non-party the Jewish Defense League for protective order. Non-party Ian Sigel's motion for protective order. Both motions are granted in part and denied in part. The motion for sanctions is denied.

(11) ■ [For further detail see order attached to the original minute order.]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

REVEREND STEPHEN TRACY )
ANDERSON, )
 )
Plaintiff, )
 )
vs. ) No. 00 C 2021
 )
MATTHEW F. HALE, THE WORLD )
CHURCH OF THE CREATOR, an )
unincorporated association, and THE )
ESTATE OF BENJAMIN NATHANIEL )
SMITH, )
 )
Defendants. )

DOCKETED
FEB 1 3 2001

## MEMORANDUM OPINION AND ORDER

Defendants subpoenaed a provider of e-mail services and thereafter sent e-mail messages to persons whose names were furnished by that provider. It has issued subpoenas to other such providers, presumably with the intention of pursuing similar follow-ups. They have also served a subpoena on the Jewish Defense League (JDL) seeking telephone bills as well as videotapes, audio recordings and transcripts of any conversation or event relating to Benjamin Smith or the defendants. Finally, they have served a subpoena on Ian R. Sigel (Sigel) to take his deposition and to obtain various documents. Both JDL and Sigel have moved for protective orders and JDL has also moved for sanctions and modification of the subpoena. The parties have filed some 77 pages of memoranda on the issues (which could have been much shorter if the rhetoric was less strident), as well as numerous exhibits.

Rather than respond to all the various arguments we think it is better to get back to basics. Plaintiff claims that defendants were complicit in his being shot by Benjamin Smith in July 1999. Neither Sigel nor JDL personally know anything about what led up to the

38

shooting or the possible complicity of the defendants, the key issues in the lawsuit. Their involvement relates only to their relationship with Kenneth Dippold, who has given a statement incriminating the defendants. Dippold, by his own admission, was a member of the Ku Klux Klan in Indiana and then became a member of the World Church of the Creator (WCOTC) in the fall of 1999. He began to have second thoughts before Christmas, and he talked with JDL in January. He talked to Sigel and a Dr. Epstein. They were the only ones from JDL to whom he talked, although there were six others at his first meeting; he exchanged numerous e-mails with JDL both before and after he made his statement, and Sigel and another JDL member were at the meeting with the lawyer on February 23, 2000, when he gave his statement.

Defendants wish to focus on JDL as a sworn enemy of WCOTC as a predicate for an argument that it induced Dippold to say what he did. They thus want to delve into JDL and its activities. But that goes too far afield. There is, we are sure, no real dispute that JDL has a dim view of the WCOTC – almost everyone does, and JDL has some particularly good reasons for feeling as it does. Sigel and JDL want to restrict discovery almost to the vanishing point, but this is not just a fishing expedition into an undefined relationship in hopes of turning up something unfavorable about a witness, as in United States v. Various Assets of Harry Kaufmann Motorcars of Milwaukee, Wisconsin, 769 F.Supp. 299 (E.D.Wisc. 1991). JDL brought Dippold to the attorney who took his statement and to the FBI. Defendants are entitled to explore to some extent how Dippold became a latter day Saul on the road to Damascus.

Where does that leave us?

1. Providers for JDL, Sigel and Epstein should provide e-mail and telephone records

only for communications to Dippold's numbers for the period June 1999-December 2000, the period agreed upon by JDL ("the period"), subject to an attorneys' eyes only restriction.

2. Defendants' counsel shall cease sending e-mail to JDL members or others associated with the Dippold statement.

3. JDL and Sigel shall produce e-mail and telephone records and documents from the period relating to Dippold.

4. Defendants' counsel shall disclose to JDL, Sigel and plaintiff's counsel the e-mails he has received in response to his e-mails.

5. Sigel shall appear for his deposition. JDL shall arrange for the deposition of Dr. Epstein and shall identify by name the unidentified member attending the statement session. None need disclose his address or employment, although they each describe the nature of his employment. The inquiry shall be confined to the relationship with Dippold.

6. JDL shall furnish e-mail and telephone records for the period that reflects calls to JDL members who met with Dippold, if such filtering can be accomplished.

7. The identities of the other persons at the meeting with Dippold prior to the statement need not be disclosed until such time, if it should happen, that it is evident one or more of the others may have relevant information that is not cumulative.

8. JDL and Sigel shall produce the documents and materials they previously agreed to produce. All productions shall be for attorneys' eyes only.

9. The motion for sanctions is denied.

_____
JAMES B. MORAN
Senior Judge, U. S. District Court

_____Feb. 13_____, 2001.