# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | Martin C. Ashman |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2021 | **DATE** | 5/10/2001 |
| **CASE TITLE** | Reverend Stephen Tracy Anderson vs. Matthew F. Hale, et al. | | |

**MOTION:**   [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐   Filed motion of [ use listing in "Motion" box above.]

(2) ☐   Brief in support of motion due _____.

(3) ☐   Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐   Ruling/Hearing on _____ set for _____ at _____.

(5) ☐   Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐   Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐   Trial[set for/re-set for] on _____ at _____.

(8) ☐   [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐   This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■   [Other docket entry]   Enter memorandum opinion and order. Defendants' and non-party WCOTC members' emergency motion to stay and motion to quash plaintiff's e-mail and computer subpoenas is denied in part and granted in part subject to a protective order.

(11) ■   [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| | Mail AO 450 form. |
| ✓ | Copy to judge/~~magistrate judge~~. |

| | 5 |
|---|---|
| | number of notices |
| | MAY 1 0 2001 |
| | date docketed |
| | docketing deputy initials |
| | 5/10/2001 |
| | date mailed notice |

Document Number

**52**

IS   courtroom deputy's initials

Date/time received in central Clerk's Office

IS   mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

REVEREND STEPHEN TRACY )
ANDERSON, )
)
Plaintiff, )         Case No. 00 C 2021
)
v. )         Judge James B. Moran
)
MATTHEW F. HALE; THE WORLD )         Magistrate Judge
CHURCH OF THE CREATOR, an )           Martin C. Ashman
unincorporated association; )
THE ESTATE OF BENJAMIN )
NATHANIEL SMITH, )
)         **DOCKETED**
Defendants. )
                                         **MAY - 5 2001**

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff, Reverend Stephen Tracy Anderson, filed a
complaint against Defendants, Matthew F. Hale, The World Church
of the Creator (the "WCOTC"), and the Estate of Benjamin
Nathaniel Smith, seeking relief under various federal and state
laws for violating Plaintiff's rights by physically injuring him.
Presently before this Court is Defendants' and Non-Party WCOTC
Members' Emergency Motion to Stay and Motion to Quash Plaintiff's
E-Mail and Computer Subpoenas.[1]  Defendants contend that the
information sought is irrelevant and that disclosure of the
information will infringe upon the First Amendment associational
rights of anonymous WCOTC members.  For the reasons that follow,

---

[1]  Because the two nonparties that have joined Defendants in
filing this motion are WCOTC members, we generally refer to the
arguments expressed therein as those of "Defendants."

52

Defendants' motion is denied in part and granted in part subject to a protective order.

## I. Background

On December 22, 2000, Plaintiff served subpoenas on four Internet service providers -- America Online, Yahoo, Microsoft, and Netscape -- requesting them to produce any information, including e-mails, activity logs, and address books, in connection with thirteen Internet accounts. Nearly all of the accounts were linked to e-mail addresses either posted on the WCOTC Web site or listed in literature advocating WCOTC beliefs.[2]

Some of those e-mail addresses appeared with the actual name of the individual user of the accompanying Internet account, while others appeared with the pseudonym of the individual user of the account, and still others appeared with no identifying information at all. In this way, certain WCOTC members intended to actively participate in the WCOTC with their anonymity preserved.[3]

_____

[2] Plaintiff subpoenaed one of the thirteen accounts because Defendants indicated that Christine Weiss-Smead used the account. Weiss-Smead is a publicly identified WCOTC member, and was Smith's girlfriend at the time of the shooting. *See Anderson v. Hale*, No. 00 C 2021, 2001 WL 417991, at *1 (N.D. Ill. Apr. 23, 2001).

[3] By way of example, one of the subpoenaed accounts was linked to the e-mail address pmhale1@aol.com, which was identified on the WCOTC Web site as contact information for Hale, the publicly identified Supreme Leader of the WCOTC. On the other hand, the e-mail address webmaster@creator.org, linked to another of the subpoenaed accounts, was not identified on the
(continued...)

Whether the e-mail address was posted in cyberspace or listed in a homemade leaflet in Indiana, used by well-known Hale or the nameless Brother John, neither party disputes that the aim of exhibiting the e-mail addresses was to provide the public with a means of communicating with the WCOTC. Indeed, the users held themselves out as contact people for specific inquiries ranging from "how to add your e-mail as a contact" to "how to order fliers." (*See* Pl.'s Consolidated Resp. Defs.' Emergency Mots. Quash Subpoenas Ex. B at 1, 3.)

Alarmed by the scope of Plaintiff's subpoenas and concerned with protecting the First Amendment associational rights of anonymous WCOTC members, Defendants and Sister Melody LaRue and Reverend Dan Hassett, both nonparty WCOTC members whose account information was subpoenaed, immediately filed the instant motion. The gravamen of the motion is that the subpoenas transgress Judge Moran's December 20, 2000 ruling, of which neither party was aware when Plaintiff served the subpoenas.

In that decision, Judge Moran denied Plaintiff's request for production of the WCOTC's membership list, citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958), and *Marshall v. Bramer*, 828 F.2d 355 (6th Cir. 1987). *See Anderson v. Hale*, 198 F.R.D. 493, 494-95 (N.D. Ill. 2000). The adverse consequences

---

[3](...continued)
WCOTC Web site as contact information for a specific individual. (*See* Pl.'s Consolidated Resp. Defs.' Emergency Mots. Quash Subpoenas Ex. B at 2-3.)

that would likely befall anonymous WCOTC members as a result of disclosure surmounted any remote possibility of information proving worthwhile to Plaintiff's case. *See id.* In other words, the balance of interests weighed in Defendants' favor so discovery was disallowed.

Judge Moran also placed limits on Plaintiff's efforts to obtain the WCOTC's and Hale's telephone records for the same reason. *See id.* at 495. Rather than permit Plaintiff to obtain the records generally, Judge Moran held that Defendants need only produce telephone records pertaining to calls between numbers associated with the WCOTC and Hale and any numbers associated with Smith. *See id.* Finally, with respect to Plaintiff's request for the WCOTC's and Hale's e-mail messages, Judge Moran limited disclosure to e-mails sent to the WCOTC or to Smith during the relevant time period. *See id.* Apparently, this ruling was also based on First Amendment grounds.

Plaintiff concedes that the December ruling necessarily narrowed the scope of the subpoenas. (*See* Pl.'s Consolidated Resp. Defs.' Emergency Mots. Quash Subpoenas at 4.) Furthermore, Plaintiff points to other events that have narrowed the scope of the subpoenas as well. For instance, in January 2001 Plaintiff informed Defendants that the Internet service providers would not produce "address books, distribution lists, e-mails, or any of the other disputed categories of information." (*Id.* at 5.) Finally, discussions between the parties have minimized the ambit

of information originally sought by Plaintiff. (*See* Tr. Oral Argument 3/13/01 at 35-37.)

That brings us to where we are today. Presently, Plaintiff asks the Internet service providers to produce the "subscription information" of thirteen Internet accounts. From what we can tell, subscription information is information about a specific Internet account that is in the control of that user's Internet service provider. Apparently, different Internet service providers cache different sorts of data. Hence, neither party can describe exactly what information a specific Internet service provider will provide pursuant to one of the subpoenas. (*See* Tr. Oral Argument 3/13/01 at 38-39, 44; *see also* Pl.'s Supplemental Br. at 1-2; Defs.' Supplemental Br. at 1-4.)

It comes as no surprise then that Defendants' main point of contention remains the same: disclosure of subscription information will unjustifiably infringe upon anonymous WCOTC members' associational rights. Arguing that heightened scrutiny applies, Defendants continue to attack all of the subpoenas on grounds of relevancy and need, concluding that the balance of interests weighs in Defendants' favor. As to relevancy, Defendants contend that virtually all of the Internet accounts belong to individuals who have no connection whatsoever to the claims and defenses of the lawsuit. With regard to need, Defendants question Plaintiff's efforts to obtain the subpoenaed information elsewhere through less intrusive means. Finally, in

terms of injury, Defendants argue that the subscription information threatens to expose the identity of anonymous WCOTC members and subject them to harassment, threats, and reprisal. In making this argument, Defendants rely heavily on Judge Moran's ruling, which, as discussed above, affirmed the right of WCOTC members to remain anonymous. *See Anderson*, 198 F.R.D. at 494-95.

First and foremost, Plaintiff questions the applicability of the First Amendment associational privilege to this dispute. Plaintiff next contends that, assuming the associational privilege applies, the balance of interests weighs in his favor so discovery should be allowed. All of the subscription information, Plaintiff argues, is relevant to establishing a conspiracy between Hale and Smith, and attempts to obtain the information elsewhere have proven futile. Further, Plaintiff contends that any injury caused by disclosure would be inconsequential because Plaintiff seeks only private disclosure of information relating to publicly identified e-mail addresses. These arguments are addressed below.

## II. **Discussion**

Information is generally discoverable under the Federal Rules of Civil Procedure. The minimal showings of relevance and admissibility hardly pose much of an obstacle for an inquiring party to overcome, even considering the recent amendment to Rule 26(b)(1). *See Thompson v. Dep't of Hous. & Urban Dev.*, Civ.A.

No. MJG-95-309, 2001 WL 258390, at *3-4 (D. Md. Mar. 13, 2001);
*Shapo v. Engle*, No. 98 C 7909, 2001 WL 204804, at *2 (N.D. Ill.
Mar. 1, 2001); Fed. R. Civ. P. 26(b)(1).

The landscape greatly changes, however, once a party objects
to discovery on the ground of First Amendment associational
privilege, which is at issue here. When that happens, the
inquiring party's interest in seeking to vindicate his rights by
conducting discovery is pitted against the affected party's
interest in protecting himself from disclosure of privileged
information. Consequently, mere showings of relevancy and
admissibility no longer suffice; additional considerations come
into play.

The First Amendment associational privilege emerges when a
discovery request specifically asks for a list of a group's
anonymous members, or requests any similar information that goes
to the heart of an organization's associational activities, and
such disclosure could arguably infringe upon associational
rights. *See Adolph Coors Co. v. Movement Against Racism & the
Klan*, 777 F.2d 1538, 1542 (11th Cir. 1985); *Wilkinson v. FBI*, 111
F.R.D. 432, 436-37 (C.D. Cal. 1986). Infringement occurs if
disclosure would adversely affect the members' ability to pursue
their collective effort to foster beliefs by either inducing them
to withdraw from the organization or dissuading others from
joining it. *See Patterson*, 357 U.S. at 462-63. As alluded to
above, a concrete showing of infringement is unnecessary to

assert the privilege. Instead, the movant need only show that "there is some probability that disclosure will lead to reprisal or harassment." *Black Panther Party v. Smith*, 661 F.2d 1243, 1267-68 (D.C. Cir. 1981).

Assuming a sufficient showing of infringement, the determination of whose interest prevails is made by carefully balancing the parties' interests under heightened scrutiny; the First Amendment associational privilege is not absolute. *See Buckley v. Valeo*, 424 U.S. 1, 64-65 (1976); *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539, 544-46 (1963); *Bates v. City of Little Rock*, 361 U.S. 516, 523-27 (1960); *Patterson*, 357 U.S. at 463-66. In cases involving the government and a private party, the Supreme Court has announced that the balancing of interests must reveal that the government has a compelling interest in disclosure and that the interest in disclosure bears a substantial relation to the information sought. *See Patterson*, 357 U.S. at 463-66. This same balancing test equally applies to cases involving two private parties. *See Anderson*, 198 F.R.D. at 494; *Britt v. Superior Court of San Diego County*, 574 P.2d 766, 774 (Cal. 1978) ("[I]n some respects, the threat to First Amendment rights may be more severe in a discovery context, since the party directing the inquiry is a litigation adversary who may well attempt to harass his opponent . . . by probing deeply into areas which an individual

may prefer to keep confidential."). And it applies with equal
force whether the inquiring party is seeking wholesale disclosure
of a membership list or more limited disclosure of the identity
of specific members of a dissident organization. *See Crocker v.
Revolutionary Communist Progressive Labor Party*, 533 N.E.2d 444,
447 (Ill. App. Ct. 1988).

Courts advert to three factors when conducting the
compelling interest/substantial relation inquiry: the relevance
of the information sought, the need for that information, and the
extent of injury that disclosure may cause to associational
rights. *See Black Panther Party*, 661 F.2d at 1268; *Adolph Coors
Co. v. Wallace*, 570 F. Supp. 202, 208 (N.D. Cal. 1983); *Crocker*,
533 N.E.2d at 448. The party seeking disclosure bears the burden
of proving that the balance of these factors weighs in his favor.
Given the preferred position of First Amendment rights and
heightened scrutiny that applies, this is no easy task.

For example, the inquiring party cannot simply demonstrate
that the information sought may be relevant to some issue in the
case. Instead, the inquiring party must show that the
information sought is so relevant that it goes to the "heart of
the matter"; that is, the information is crucial to the party's
case. *See Black Panther Party*, 661 F.2d at 1268 ("Mere
speculation that information might be useful will not suffice;
litigants seeking to compel discovery must describe the
information they hope to obtain and its importance to their case

with a reasonable degree of specificity."); *Wallace*, 570 F. Supp. at 209 ("This enhanced scrutiny is appropriate since civil lawsuits could be misused as coercive devices to cripple, or subdue, vocal opponents.").

Likewise, with respect to need, the inquiring party cannot merely demonstrate that seeking similar information from alternative sources will be more burdensome or costly. Rather, the inquiring party must exhaust all reasonable alternative sources of information by which he could obtain the information in a less chilling manner. *See Zerilli v. Smith*, 656 F.2d 705, 714-15 (D.C. Cir. 1981); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.*, 590 F.2d 1139, 1153 (D.C. Cir. 1978). Failure to exhaust all reasonable alternative sources precludes disclosure even if the information sought is deemed crucial to the party's case. *See Int'l Union*, 590 F.2d at 1153.

Of course the argument in favor of upholding a claim of privilege grows stronger as the danger to associational rights increases, notwithstanding the inquiring party's relevancy and need. *See Black Panther Party*, 661 F.2d at 1267. Conversely, where the threat of injury appears minimal or inconsequential in nature, it is likely that discovery will be allowed. *See United States v. Comley*, 890 F.2d 539, 545 (1st Cir. 1989); *Marshall*, 828 F.2d at 360 (finding that the imposition of a protective

order adequately guarded the rights of those whose names would be revealed through disclosure).

With this in mind, we assess Defendants' assertion of First Amendment associational privilege to quash Plaintiff's subpoenas. To avoid redundancy, accounts used by publicly identified WCOTC members will be discussed concurrently, as will accounts used by anonymous WCOTC members. But due to the differing nature of inquiry in terms of each group, we discuss each group independently.

## A.   Publicly Identified WCOTC Members

Seven of the Internet accounts subpoenaed by Plaintiff belong to publicly identified WCOTC members, namely Hale, Weiss-Smead, Hassett, LaRue, and Reverend Lisa Russell.[4]  To make out a prima facie claim of infringement, Defendants direct this Court's attention to anonymous WCOTC members, arguing that disclosure of the publicly identified members' subscription information will reveal the identity of anonymous WCOTC members and subject them to harassment and reprisal.  In essence, Defendants argue that indirect and incidental disclosure warrants as much protection as direct disclosure under the First Amendment.

The cases relied on by Defendants to support their sweeping assertion of First Amendment privilege largely involve specific

---

[4]   Russell uses two of the accounts, and so does Hassett. (*See* Defs.' Supplemental Br. at 6.)

requests for membership lists directed to dissident

organizations. *See Bates*, 361 U.S. at 517 (ordinance requiring

production of membership list); *Patterson*, 357 U.S. at 451

(discovery order to produce membership list); *Anderson*, 198

F.R.D. at 494-95 (discovery request to produce membership list

and telephone records generally). Our own review of cases

finding an arguable claim of First Amendment associational

privilege revealed these same circumstances. *See Brown v.*

*Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 88

(1982) (statute compelling production of contributor list);

*Gibson*, 372 U.S. at 540 (discovery order to produce membership

list); *DeGregory v. Attorney Gen. of N.H.*, 383 U.S. 825, 827 n.4

(1966) (discovery request to produce evidence of associations);

*Marshall*, 828 F.2d at 357 (discovery order to produce membership

list); *Fed. Election Comm'n v. Machinists Non-Partisan Political*

*League*, 655 F.2d 380, 389 (D.C. Cir. 1981) (discovery order to

produce membership list); *Int'l Union*, 590 F.2d at 1146

(discovery order to produce contributor list); *Wallace*, 570

F. Supp. at 204 (discovery order to produce membership and

contributor lists); *1980 Ill. Socialist Workers Campaign v. State*

*of Ill. Bd. of Elections*, 531 F. Supp. 915, 916 (N.D. Ill. 1982)

(statute requiring production of contributor list); *Int'l Soc'y*

*for Krishna Consciousness, Inc. v. Lee*, No. 75 Civ. 5388 (MJL),

1985 WL 315, at *2 (S.D.N.Y. Feb. 28, 1985) (discovery request to produce membership list); *Britt*, 574 P.2d at 768 (discovery order to produce evidence of associations); *Tilton v. Moye*, 869 S.W.2d 955, 956 (Tex. 1994) (discovery order to produce membership list); *Crocker*, 533 N.E.2d at 446 (discovery order to produce partial membership list).

Protection against the type of disclosure sought in all of the cases was held to be indispensable to preserving freedom of association. *See Patterson*, 357 U.S. at 462. The organizations espoused dissident beliefs and publicly identified members were exposed to some kind of manifestation of hostility due to their beliefs. If the court compelled disclosure of the organizations' membership lists -- information that goes to the heart of an organization -- anonymous members would similarly suffer harassment and reprisal because of their beliefs. In the end, the organizations' voice would be lost because existing members would leave and potential members would not join. This substantial interference with First Amendment rights justified special protection from discovery.

Here the situation is remarkably different. Admittedly, a dissident organization is lurking in the background, and the WCOTC's views are as unpopular and provoke at least as much hostility as the organizations contained in the cited cases. *See infra* p. 18. However, the similarities end there. Unlike *Patterson* and its progeny, Plaintiff does not ask for a

membership list, nor does Plaintiff directly seek the identity of
a single anonymous WCOTC member.  Furthermore, contrary to the
cited cases, the information Plaintiff seeks does not relate
exclusively to the WCOTC.  Defendants admit that the subscription
information should reveal information connected with "people
[who] hav[e] nothing to do with the WCOTC" as well as people who
have something to do with the WCOTC.  (Defs.' Mem. Supp.
Emergency Mot. Stay & Mot. Quash Pl.'s E-Mail & Computer
Subpoenas at 2.)

All of these facts sufficiently detach this dispute from the
concept enunciated in *Patterson* by revealing that disclosure is
not directed at the heart of WCOTC's protected associational
activities.  *See In re Grand Jury Proceedings*, 633 F.2d 754, 757
(9th Cir. 1980); *Wilkinson*, 111 F.R.D. at 436-37; *O'Neal v.
United States*, 601 F. Supp. 874, 878-79 (N.D. Ind. 1985); *Kroll
v. United States*, 573 F. Supp. 982, 987 (N.D. Ind. 1983).
Rather, disclosure is directed at publicly identified
individuals, who in Defendants' own words "have close
connections" with Hale and Smith, to ascertain the involvement,
if any, of these individuals in the alleged Hale-Smith
conspiracy.  (Tr. Oral Argument 3/13/01 at 39-40.)  In other
words, the subpoenas aim to discover what the publicly identified
WCOTC members know about a conspiracy through their personal
information and communications with other people, not who they
know in the WCOTC.  (*See* Defs.' Supplemental Br. at 13 (allowing

disclosure "would enable plaintiff to then learn the identity of individuals who communicated with Hale"). As a result, Defendants cannot show that the subpoenas arguably infringe upon the associational rights of anonymous WCOTC members.

True, the subscription information may contain a user's address book, and one of the e-mail addresses or names contained in the address book could belong to an anonymous WCOTC member. Plaintiff, we assume, may then be able to somehow determine with the aid of other resources that the user of the e-mail address or named individual is, in fact, a WCOTC member.[5] Nevertheless, indirect and incidental disclosure of this type is a far cry from the laws and discovery orders cited in the cases above mandating the revelation of membership lists or associations. Again, unlike the subpoenas in those cases, which were directed at the heart of associational activities, it cannot be said that Plaintiff's subpoenas constitute an arguable threat to associational rights by creating an apparent chilling effect. The risk of inducing present members to withdraw or of discouraging potential members from joining is too remote and speculative to warrant heightened scrutiny under the First Amendment.[6]

---

[5] Defendants have produced no evidence showing that disclosure of the publicly identified WCOTC members' subscription information, by itself, will reveal the identity of an anonymous WCOTC member. (See Defs.' Supplemental Br. Ex. A.)

[6] At worst, perhaps people might be deterred from communicating via e-mail with publicly identified WCOTC members
(continued...)

There is a difference between disclosure of the fact of communicating with Hale and disclosure of the fact of belonging to the WCOTC. The latter strikes at the heart of the WCOTC's associational activities, while the former does not; the nexus of disclosure and injury differs. Plaintiff places the difference in perspective: "The fact that individuals may be identified in subscription information doesn't make them World Church . . . members, it makes them people that [the publicly identified WCOTC member] communicated with." (Tr. Oral Argument 3/13/01 at 48.)

Surely the *Patterson* Court did not intend to provide publicly identified members of dissident organizations with a nearly impenetrable shield (in the form of heightened scrutiny) to block general discovery requests.[7] Consider the facts here. There is essentially no way that Plaintiff can establish a conspiracy between Hale and Smith without obtaining communications sent or received by WCOTC members. (Indeed, Plaintiff's case is largely based on such a communication.) To

---

[6] (...continued)
as a result of disclosure, as Defendants suggest. (*See* Defs.' Supplemental Br. at 13-14.) But this does not arguably demonstrate that people will be deterred from joining or continuing membership with the WCOTC.

[7] Significantly, the *Patterson* Court only applied the associational privilege to the NAACP's anonymous rank-and-file members. Disclosure of that information constituted a significant encroachment on First Amendment rights. *See Buckley*, 424 U.S. at 64; *Patterson*, 357 U.S. at 462-63.

block discovery here, and in similar circumstances, unfairly and unjustifiably encumbers Plaintiff's right to discovery.[8]

In sum, the associational privilege is not fairly implicated by these subpoenas, which Plaintiff directed at publicly identified WCOTC members. The subpoenas affect the WCOTC's associational activities in too remote and incidental of a way to create the apparent chill to associational rights necessary to make out a prima facie claim of infringement. For that reason, Defendants' motion to quash these subpoenas is denied.

### B.    Anonymous WCOTC Members

To the contrary, the remaining six subpoenas fall squarely within the scope of the First Amendment associational privilege.[9]

---

[8]    This is not to say that Plaintiff is entitled to any and all information that subscription information may include. Rule 26(b)(1) specifies that Plaintiff can only obtain information that falls within the relevant time period; this temporal limitation applies to any information if such filtering can be accomplished.

But, as this decision makes patently clear, we do not believe that Rule 26(b)(1) restricts Plaintiff to e-mail addresses and names associated with Hale and Smith, assuming e-mail addresses and names are contained in subscription information. *Cf. Anderson*, 198 F.R.D. at 495 (finding that the associational privilege limited disclosure of Hale's telephone records to numbers associated with Smith). The publicly identified WCOTC members may have communicated with people other than Hale and Smith about the conspiracy -- e.g., Kenneth Dippold. Furthermore, the alleged conspiracy may extend outside Hale and Smith.

[9]    Briefly, we address Plaintiff's challenge to standing, which is based on the fact that Defendants have no knowledge of who operates www.klassen.net/rahowa. (*See* Pl.'s Supplemental Br. at 6-7.) We believe that the lack of knowledge is not

(continued...)

Disclosure that aims to reveal the identity of anonymous WCOTC members directly chills associational rights.

The uncontroverted factual record of past harassment makes the chilling effect of disclosure apparent. The WCOTC ranks as one of the most despicable and hated organizations of this time. Its fanatical views advocating the advancement and expansion of the White race to the detriment of other races are antithetical to the views espoused by mainstream society. Moreover, verbal and physical attacks committed by publicly identified WCOTC members against "inferior races" threaten safety and order across communities. It goes without saying that WCOTC members are under constant threat of harassment and harm. As a result, many members conceal their identity.

And understandably so. Publicly identifying oneself as a WCOTC member gives rise to consequences. For instance, one member lost his job after his association became known, and Hale himself has been unable to obtain a law license because of his beliefs and association.

In light of this, it is apparent that disclosure of anonymous WCOTC members' identities is likely to chill

---

[9](...continued)
controlling. This anonymous individual actively promotes WCOTC beliefs and urges people to read WCOTC literature. In fact, the user's Web site appeared on literature with contact information of Hale and an anonymous WCOTC member. Accordingly, it is reasonably likely that allowing disclosure would adversely affect the WCOTC's membership and diminish its voice. Therefore, the WCOTC has standing to object to discovery on behalf of this individual; in a sense the two are identical. *See Patterson*, 357 U.S. at 459-60.

associational rights. That means heightened scrutiny applies, and Plaintiff, the one seeking disclosure, bears the burden of proving to this Court that the balance of interests weighs in his favor.

A review of Plaintiff's submissions, however, reveals that this Court need not undertake a painstaking balancing of interests; Plaintiff's scant showing of relevancy ends the analysis quite quickly. Instead of providing any specificity whatsoever, Plaintiff offers a general statement regarding the relevancy of the six Internet accounts to the underlying lawsuit: the subscription information of the anonymous members would assist in establishing a conspiracy between Hale and Smith. (*See* Pl.'s Supplemental Br. at 2-3.) Certainly lots of information would assist in establishing the conspiracy. But general statements of relevancy such as this come nowhere close to meeting the exacting standard of First Amendment analysis. Indeed, the statement tells nothing of how the information sought goes to the heart of the Hale-Smith conspiracy or is otherwise crucial to Plaintiff's case.[10] *See Black Panther Party*, 661 F.2d at 1268. Plaintiff's showing of relevancy is so weak that it cannot overcome Defendants' initial showing of injury. *See*

---

[10] Two of the subpoenaed Internet accounts are demonstrative. One belongs to the person who maintains the WCOTC's Web site, while another belongs to an individual who listed his e-mail address in literature distributed in Carmel, Indiana. How these facts alone make their subscription information crucial to Plaintiff's case is left to the imagination.

*Wallace*, 570 F. Supp. at 209 ("Any court . . . should require, at a minimum, that the plaintiffs demonstrate a high degree of relevancy of the information sought."). Therefore, disclosure is disallowed.

In arriving at this conclusion, we acknowledge the fact that Plaintiff obtained the e-mail addresses either from the WCOTC's Web site or from literature available to the public. Further, we recognize that the stated purpose of displaying the e-mail addresses is to provide the public with a means of communicating with the WCOTC. Nonetheless, we agree with Defendants that this reality should not defeat the right to remain anonymous. The fact that these individuals refrained from disclosing their true identities with their e-mail addresses demonstrates an intent to remain anonymous. To ignore this would mean that the only way a WCOTC member could remain anonymous is by being inactive. If that were the case, the right to associate would be meaningless.

### C.   Protective Order

To adequately guard the rights of those whose names or e-mail addresses may be revealed by disclosure of the publicly identified WCOTC members' subscription information, this Court imposes the following protective order until further order of court:

> Subscription information will not be filed
> with the Clerk of the Court. Furthermore,
> the parties will not file with the Clerk of
> the Court (1) any deposition or part thereof
> taken of any person whose name is obtained at

least in part based on information included
in the publicly identified WCOTC members'
subscription information, or (2) any document
that contains the name or e-mail address of
any person that is obtained at least in part
from the publicly identified WCOTC members'
subscription information. Finally,
disclosure of the publicly identified WCOTC
members' subscription information is subject
to an attorneys' eyes only restriction.

### III.   Conclusion

For the reasons stated, Defendants' motion is denied as to

the Internet accounts used by publicly identified WCOTC members,

but granted as to the Internet accounts used by anonymous WCOTC

members.  In reaching this decision, we adopt Plaintiff's

definition of subscription information conveying that e-mails are

not part of an account's subscription information.  Lastly, with

respect to discoverable subscription information, this Court

imposes a protective order, as stated above.

                    **ENTER ORDER:**

                    **MARTIN C. ASHMAN**
**Dated:**  May 10, 2001.          United States Magistrate Judge

Copies have been mailed to:

MARY ROSE ALEXANDER, Esq.
STEPHEN A. SWEDLOW, Esq.
AMY J. KAPPELER, Esq.
KATHERINE D. VEGA, Esq.
Latham & Watkins
233 South Wacker Drive
Suite 5800
Chicago, IL  60606

NANCY CHANG, Esq.
WILLIAM H. GOODMAN, Esq.
Center for Constitutional
  Rights
666 Broadway
7th Floor
New York, NY  10012

JANINE L. HOFT, Esq.
People's Law Office
1180 North Milwaukee Avenue
Chicago, IL  60622

Attorneys for Plaintiff

GLENN GREENWALD, Esq.
Greenwald, Christoph
  & Holland, P.C.
1370 Avenue of the Americas
32nd Floor
New York, NY  10019

Attorneys for Defendants